USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/22/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENERGY TRANSPORTATION GROUP, INC.,

Plaintiff,

-against-

BOREALIS MARITIME LIMITED,

Defendant.

No. 21 Civ. 10969 (AT)

**STIPULATION AND ORDER REGARDING THE FORMAT OF DOCUMENT PRODUCTIONS**

This Stipulation and Order Regarding the Format of Document Productions ("Stipulation") shall govern the parties in the above-captioned action (the "Action").

## I. GENERAL PROVISIONS

**A.** Absent special circumstances, the parties will prepare their production documents in accordance with the agreed-upon specifications set forth below. These specifications apply to documents or electronically stored information ("ESI") which are to be produced in this litigation.

## II. PRODUCTION OF HARD COPY DOCUMENTS

**A. TIFFs.** Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

**B. OCR Text Files.** Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page. Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt. OCR text files should be provided in a self-identified "Text" directory. To the extent a

document is redacted, OCR text files for such a document shall not contain text for redacted portions.

**C. Database Load Files/Cross-Reference Files.** Documents should be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) should be provided in a self-identified "Data" folder.

**D. Coding Fields.** Documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, and (6) OCRTextPath. Custodians should be identified using the convention "last name_first name" or "Last name, First name." Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Custodian" field shall be separated by a semicolon.

**E. Bates Numbering**. Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

**F. Parent-Child Relationships.** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) should be preserved. For example, if a party

produces a printout of an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

**G. Unitizing of Documents.** When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).

## III. PRODUCTION OF ESI

**A. TIFFs.** Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

**B. System Files.** Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

**C. De-Duplication.** A party is only required to produce a single copy of a responsive document, and a producing party may, but is not required to, de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the parent level. However, hard-copy documents shall not be eliminated as duplicates of responsive ESI. In addition, the identity of other custodians of de-duplicated items must be listed in the "Custodian" field of the copy of the single record that is produced. Custodians should be identified using the convention "last name_first name" or "Last name, First name." Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Custodian"

field shall be separated by a semicolon. If, during the course of its review, the producing party identifies additional duplicate documents, the parties reserve their rights to use a custom de-duplication protocol.

**D. Parent-Child Relationships**. Parent-child relationships (*i.e.*, the association between an attachment and its parent document) should be preserved to the extent possible.

**E. Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Appendix 1 that can be extracted from a document shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach; (5) Custodian, and (6) NativeLink fields (which may be populated by the party or the party's vendor).

**F. Extracted Text Files.** For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

**G. Database Load Files/Cross-Reference Files.** Documents should be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) should be provided in a self-identified "Data" folder.

**H. Native Files.** Source code, large diagrams, Excel files and/or .csv files should be produced in native format ("Native Files"), unless they have redactions. Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendix 1. Redacted documents may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Any metadata fields for redacted documents that would reveal privileged information shall be excluded. Each producing party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########".)

**I. Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may query the database for discoverable information and generate a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will show the column headers for each field of data included. The parties shall meet and confer to finalize the

appropriate data extraction and production format for specific information contained in a database.

**J. Audio Files and Video Files.** Audio files and video files, to the extent their contents can be determined to be responsive, will be produced in a reasonably usable form as may be agreed upon by the parties.

**K. Requests for Other Native Files.** Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in Appendix 1.

**L. Confidentiality Designations.** If a party reduces Native Files or other ESI designated "Confidential" or "Highly Confidential" to hardcopy form, it shall mark the hardcopy with the appropriate designation.

**M. Color.** Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing: (1) a list of the Bates numbers of documents it requests to be produced in color

format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests, but need not make such production until the parties reach agreement regarding the additional costs associated with the production of documents in color.

## IV. PROCESSING OF THIRD-PARTY DOCUMENTS

**A.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

**B.** The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties.

**C.** Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

## V. MISCELLANEOUS PROVISIONS

**A.** Nothing in this protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**B.** The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, a reasonable time before the agreed-upon or expected production date, such party shall inform the requesting party in writing

as to why compliance with the Stipulation is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with the other parties to the Action.

**AGREED:**

LLOYD S. CLAREMAN

By: ______________________

Lloyd S. Clareman
121 East 61st Street
New York, New York 10021
(212) 751-1585

*Attorneys for Plaintiff*

BERG & ANDROPHY

By: ______________________

Jenny H. Kim
Chris L. Sprengle
120 West 45th Street, 38th Floor
New York, New York 10036
(212) 646-0073

*Attorneys for Defendant*

SO ORDERED

______________________
ANALISA TORRES
United States District Judge

Dated: August 22, 2022
New York, New York