**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ENERGY TRANSPORTATION GROUP, INC.,

                                  Plaintiff,

                       -against-

BOREALIS MARITIME LIMITED,

                                 Defendant.
-----------------------------------------------------------------X

                                 <u>**ORDER**</u>

                             **21-cv-10969 (AT) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

       Before this Court are a variety of motions originating with Defendant's ("Borealis'") Motion for a Protective Order at Dkt. No. 63 ("Motion for P.O.") and Plaintiff's ("ETG's") Cross-Motion to Compel Discovery at Dkt. No. 68 ("Cross-Motion to Compel"). On August 17, 2023, the Parties were heard in a pre-motion conference and this Court granted Borealis leave to file a motion to strike certain portions of ETG's papers containing what Borealis alleges to be confidential settlement communications in violation of Federal Rule of Evidence 408. Dkt. No. 99. For the reasons stated below, Borealis' Motion to Strike at Dkt. No. 109 is DENIED; Borealis' Motion for P.O. at Dkt. No. 63 is GRANTED in part; and ETG's Cross-Motion to Compel at Dkt. No. 68 is DENIED. Multiple motions to seal were filed in connection with the underlying motions, and the motions to seal are resolved as summarized below:

- Seal Req. 1 at Dkt. No. 71 is GRANTED.

- Seal Req. 2 at Dkt. No. 74 is GRANTED.

- Seal Req. 3 at Dkt. No. 83 is GRANTED.

- Seal Req. 4 at Dkt. No. 86 is GRANTED.

- Seal Req. 5 at Dkt. No. 87 is GRANTED.

- Seal Req. 6 at Dkt. No. 89 is GRANTED.

- Seal Req. 7 at Dkt. No. 92 is GRANTED.

- Seal Req. 8 at Dkt. No. 108 is GRANTED.

- Seal Req. 9 at Dkt. No. 119 is GRANTED.

- Seal Req. 10 at Dkt. No. 128 is GRANTED.

**The Clerk of the Court is respectfully requested to close the motions at Dkt. Nos. 63, 68, 71, 74, 83, 86, 87, 89, 92, 108, 109, 119, and 128.**

## BACKGROUND[1]

This action was initially commenced on December 21, 2021.  Dkt. No. 1.  An amended complaint was filed on March 4, 2022, alleging, *inter alia*, breach of contract.  Dkt. No. 13 (the "Am. Compl").  ETG claims Borealis breached a revenue sharing agreement (the "RSA") by (i) failing to pay ETG 7.5% of remuneration Borealis received, (ii) failing to provide ETG with co-investment opportunities, and (iii) breaching the covenant of good faith and fair dealing by frustrating ETG's rights under the RSA.  Am. Compl. at ¶¶ 34–36.  ETG alleges that the RSA includes no preconditions to ETG's entitlement to revenues and investment opportunities under the RSA other than a condition that Borealis obtain "Financing[,]" as defined in the agreement.  Id. at ¶ 19.  The Amended Complaint further alleges financing was

---

[1] This Court presumes familiarity with the facts of this action and only states those necessary to resolve the instant motions.

supplied by Kohlberg Kravis & Roberts ("KKR") to capitalize three enumerated investment funds referred to as Embarcadero Maritime I, II, and III ("EM1," "EM2," and "EM3," respectively; and collectively the "EM Funds") between 2013 and 2015, in part because of introductions made possible by ETG, through the investment banking firm Miller Buckfire & Co., LLC ("Miller Buckfire"). Id. at ¶ 20.

On May 3, 2022, Borealis filed a motion to dismiss the Amended Complaint alleging, *inter alia*, that the RSA unambiguously limited the scope of ETG's entitlement under the RSA to fund financings with Miller Buckfire directly involved, specifically EM1. Dkt. No. 23. On March 20, 2023, District Judge Torres denied the motion to dismiss finding that the terms of the RSA were ambiguous as to which investment funds were implicated. Dkt. No. 50 ("Torres Order") at 5. Following the Torres Order, Borealis produced documents related to each of the EM Funds. Dkt. No. 64 ("Memo iso P.O.") at 7. Borealis produced over 255,000 pages of documents related to the EM Funds incurring costs of over $525,000. Id. The Motion for P.O. pursuant to Fed. R. Civ. P. 26 seeks to limit discovery in this action to three transactions identified in the Amended Complaint, the EM Funds. Id.

Conversely, following the Torres Order, ETG requested that Borealis produce documents related to all KKR-Borealis financing transactions, including two other funds: Stanley Maritime I and II ("SM1" and "SM2," respectively; and collectively, the "SM Funds"). Dkt. No. 69 ("Memo iso Cross-Motion"). ETG argues that the Torres Order has already found that ETG's entitlements under the RSA could plausibly extend to all KKR-Borealis financings, so information regarding all KKR-

3

Borealis financings is relevant and discoverable.  Id.  Borealis counters that the SM Funds closed in 2018 and 2023 respectively and should not be discoverable in this litigation because they are irrelevant, and production would be burdensome.  Memo iso P.O. at 9-11, 27-28.

Borealis asks to strike and seal portions of ETG's submissions containing an alleged draft settlement agreement and 2018 and 2020 emails reflecting alleged "settlement communications" between ETG and Borealis.  Dkt. No. 110 ("Memo iso Strike").  Borealis alleges that from 2018 to 2020, the Parties were negotiating to resolve the dispute over the scope of the RSA.  Id. at 6.  Borealis further argues that Fed. R. Evid. 408 prohibits the admissibility of settlement discussions to encourage Parties to compromise without fear that communications will be used against them should settlement discussions fail.  Id. at 12-14.

ETG opposes the Motion to Strike arguing that Rule 408 is an admissibility standard that is not applicable during the discovery period, and the adjudication of whether the communications are "settlement communications" is premature at this stage of the action.  Dkt. No. 123 ("Memo iot Strike").

Borealis replies that Rule 408 applies to every stage of litigation and argues that based on the logic of the Rule, the Court should resolve the dispute now because ETG is seeking to use the information impermissibly.  Dkt. No. 129 ("Reply Strike").

Borealis asks to seal Exhibits H, G, and I to Lloyd Clareman's Declaration, Dkt. No. 70 ("Clareman Decl."), and select text from Memo iso Cross-Motion based on the argument that the documents contain confidential settlement communications.

Dkt. No. 71 ("Seal Req. 1"). Borealis further requests to seal Exhibit K to the Clareman Decl., which is a term sheet alleged to contain confidential business information. Seal Req. 1 at 3. ETG opposes Seal Req. 1 arguing that the documents are attempts to renegotiate the RSA rather than settlement negotiations. Dkt. No. 73 ("Opp. to Seal Req 1"). ETG further opposes the sealing of Exhibit K arguing that only two sections could conceivably be sufficiently sensitive to overcome the presumption of public access. Id. at 3.

Borealis requests to seal Exhibits A through S of its letter motion for conference and certain language in the letter motion based on the argument that the document contains confidential settlement discussions. Dkt. No. 74 ("Seal Req. 2"). ETG opposes Seal Req. 2 arguing again that Rule 408 is inapplicable, and the presumption of public access is not overcome. Dkt. No. 80 ("Opp. Seal Req. 2").

The Parties jointly requested the Court provisionally seal Exhibits U, V, Y, and Z to ETG's sur-reply. Dkt. No. 83 ("Seal Req. 3"). ETG alleges Exhibit Y contains contact information that should be sealed as proprietary information and Exhibit Z contains proprietary and confidential business strategy. Dkt. No. 86 ("Seal Req. 4"). Borealis argues that Exhibits U and V contain competitively sensitive structural information about corporate entities. Dkt. No. 87 ("Seal Req. 5"). Borealis also requests to seal Exhibit 1, which is an identical chart to Exhibit V and ETG does not oppose the request to seal. Dkt. No. 89 ("Seal Req. 6").

Additionally, Borealis requests to seal certain information contained in Borealis' supplemental letter regarding what constitutes settlement discussions.

Dkt. No. 92 ("Seal Req. 7").  Borealis also asks to seal certain alleged settlement discussions filed (i) with Borealis' Motion to Strike, Dkt. No. 108 ("Seal Req. 8"), (ii) in ETG's opposition to the Motion to Strike, Dkt. No. 119 ("Seal Req. 9"), and (iii) with Borealis' Reply, Dkt. No. 128 ("Seal Req. 10").

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit broad discovery and parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1). "A district court has wide latitude to determine the scope of discovery." In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008).  "The burden of demonstrating relevance is on the party seeking discovery . . . Once relevance has been shown, it is up to the responding party to justify curtailing discovery." Trilegiant Corp. v. Sitel Corp., 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (citation omitted).  The Court can limit the scope of discovery where "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Regarding sealing, it is well established that there is a presumption of public access to judicial documents and the Court must find that the presumption has been overcome before sealing or redacting a document.  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006).  The Second Circuit has articulated a three-step test for determining whether the presumption of public access is overcome.  Id.  First, the Court determines whether the documents are "judicial documents" that are "useful in the judicial process."  Id.  Next, if the documents are

6

judicial documents, the Court determines the weight of the presumption of public access. Id. at 119. Finally, the Court must "balance competing considerations against [the presumption of access]," including "privacy interests of those resisting disclosure." Id. at 119-20. The assessment of whether the presumption in favor of public access is overcome must be made on a document-by-document basis. See, e.g., Brown v. Maxwell, 929 F.3d 41, 48 (2d Cir. 2019).

The Court is permitted to strike "any redundant, immaterial, impertinent, or scandalous matter" *sua sponte* or upon a motion from a party. Fed. R. Civ. P. 12(f). "Generally, motions to strike are disfavored and usually only granted for scandalous material." Metrokane, Inc. v. Wine Enthusiast, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001). "[T]he defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." Id. (quoting Wine Mkts. Int'l, Inc. v. Bass, 177 F.R.D. 128, 133 (E.D.N.Y. 1998)). Federal Rule of Evidence 408 states that evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim" is not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.

## DISCUSSION

### A. Requests to Seal

### 1. Seal Reqs. 3-6

The Parties request to seal Exhibit U, which is a memorandum with information about a joint venture final structure; Exhibit V and Exhibit 1, which each contain a structure chart; Exhibit Y, which contains a contact log; and Exhibit Z, which contains emails alleged to have confidential and proprietary business information.   Seal Reqs. 3-6.

Upon review, at step 1, each of the exhibits are possibly judicial documents "relevant to the performance of the judicial function and useful in the judicial process," Lugosch, at 115 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir.1995)), as the exhibits are being filed in connection with underlying motions and may be relevant to the Court's review and decision.

At step 2, judicial documents are only entitled to "modest" weight in discovery motions.   See In re New York City Policing During Summer 2020 Demonstrations, 635 F. Supp. 3d 247, 253 (S.D.N.Y. 2022).   Here, the exhibits are only tangentially related to the underlying discovery motions and the Court finds that Exhibits U, V, 1, Y, and Z are only entitled to a "modest" weight of the presumption of public access.

At step 3, courts in this District regularly seal documents that might disclose confidential business information.   See, e.g., Iacovacci v. Brevet Holdings, LLC, No. 1:18-CV-08048 (MKV), 2022 WL 101907, at *2 (S.D.N.Y. Jan. 11, 2022).   Additionally, Courts in this District have redacted specific business information and strategies that

might provide insights into a company's business practices. Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). Upon review, each of Exhibits U, V, 1, Y, and Z contain confidential business information and strategies that may provide insights into companies' business practices. Exhibits U, 1, and V contain proprietary information about confidential company structures. Exhibit Y includes names, email addresses, and phone numbers of various Miller Buckfire contacts at different financial institutions. Exhibit Z contains business discussions that provide insights into confidential business information. Therefore, considering the "modest" weight of the presumption of public access, and the proprietary information contained in the exhibits at issue, the Court finds that sealing is appropriate.

Therefore, Seal Req. 3 at Dkt. No. 83, Seal Req. 4 at Dkt. No. 86, Seal Req. 5 at Dkt. No. 87 and Seal Req. 6 at Dkt. No. 89 are GRANTED.

### 2.  Seal Req. 1, 2, 7, 8, 9, and 10

Rule 408 prevents parties from using "statement[s] made during compromise negotiations" to either "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. Borealis requests to seal information alleged to contain confidential settlement materials, including, an unexecuted addendum to the RSA and email chains from 2018 and 2020 ("Alleged Settlement Documents"). See Seal Reqs. 1, 2, 7, 8, 9, and 10. Borealis also requests to seal Exhibit K to Clareman Decl. which is a term sheet alleged to include commercially sensitive information. Seal Req. 1. ETG opposes the sealing requests arguing the Alleged Settlement Documents

are instead business negotiations not prohibited by Fed. R. Evid. 408.  See Opp. to Seal Req. 1.  ETG also states that the only redactions to Exhibit K which could be sensitive enough to overcome the presumption of public access are the "Carry Structure" and "Commercial Management" sections as the other redacted information has been publicly filed elsewhere.  Id. at 3.  Finally, ETG argues that a determination about whether the Alleged Settlement Documents are in fact prohibited by Rule 408 is premature in the discovery phase.  Memo iot Strike at 5.

In this Court's view, ETG cannot simultaneously rely on the Alleged Settlement Documents to "prove" the disputed claim that Borealis also thought other funds were covered by the scope of the RSA, and argue that a Rule 408 determination is premature.  As this Court understands that a determination that the Alleged Settlement Documents are in fact prohibited by Rule 408 would have widespread implications reaching the trial, this Court will decline to decide the matter at this stage.

However, so as to not allow ETG to possibly use the Alleged Settlement Documents impermissibly, the Court will not consider them in ruling on the underlying motions and will instead analyze the redacted submissions.  As the Alleged Settlement Documents offered by ETG may be inadmissible evidence, and ETG asks this Court to abstain from deciding admissibility at this stage, this Court will exercise its broad discretion and "simply ignore" the paragraphs that may cite to "inadmissible evidence."  Mayaguez S.A. v. Citibank, N.A., No.  16-CIV-6788

(PGG)(JLC), 2022 WL 901627, at *8 (S.D.N.Y. Mar. 25, 2022) (quoting another source).  This Court will instead consider the redacted papers filed publicly.

Regarding sealing the Alleged Settlement Documents (namely the unexecuted addendum to the RSA and 2018 and 2020 emails underlying Seal Req. 1, 2, 7, 8, 9, and 10), "judicial documents" are those that are "relevant to the performance of the judicial function and useful in the judicial process," Lugosch, at 115 (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir.1995)).  As this Court does not deem the Alleged Settlement Documents to be relevant to a determination about the underlying Motion for P.O. and Cross-Motion to Compel, at step 1, this Court does not find the Alleged Settlement Documents to be "judicial documents."  As the Court is not considering the documents and believes that confidential settlement communications may be implicated, the presumption of public access is negligible.  Finally, given Borealis' interests in sealing Alleged Settlement Documents that may be prohibited under Fed. R. Evid. 408, the Court finds that sealing the Alleged Settlement Documents is proper.

With respect to Exhibit K at issue in Seal Req. 1, Borealis argues that the term sheet is not a judicial document because the terms of EM1 are not relevant to determining whether the bounds of discovery should go beyond the EM Funds.  Seal Req. 1.  ETG opposes the sealing request arguing that certain information on the term sheet appears elsewhere publicly and the presumption of public access cannot be overcome.  Opp. to Seal Req. 1.

On balance, this Court agrees that the term sheet of EM1 is neither relevant nor material to the Court's decision about whether the scope of discovery in this action should go beyond the EM funds. Therefore, Exhibit K is not a judicial document entitled to a presumption of public access and may be sealed.

For the foregoing reasons, Seal Req. 1 at Dkt. No. 71, Seal Req. 2 at Dkt. No. 74, Seal Req. 7 at Dkt. No. 92, Seal Req. 8 at Dkt. No. 108, Seal Req. 9 at Dkt. No. 119, and Seal Req. 10 at Dkt. No. 128 are GRANTED.

### B. <u>Motion to Strike</u>

Borealis asks to strike exhibits including the Alleged Settlement Documents, which Borealis argues contains confidential settlement communications in violation of Fed. R. Evid. 408. Memo iso Strike at 11. ETG counters that (i) Rule 408 is an admissibility standard that is not applicable during discovery, (ii) rulings on admissibility are not permitted prior to the conclusion of discovery, and (iii) factual disputes underpin the inquiry of whether the communications are settlement communications as opposed to business negotiations. Memo iot Strike.

Pursuant to Rule 12, the Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Many Courts have found that the authority to strike under Federal Rule of Civil Procedure 12(f) applies only to pleadings as defined in Federal Rule of Civil Procedure 7(a). See, e.g., Sweigert v. Goodman, No. 1:18-CV-08653(VEC)(SDA), 2021 WL 4295262, at *2 (S.D.N.Y. Sept. 21, 2021). Rule 7(a) defines pleadings as the complaint, answer, answer to crossclaims and counterclaims, third-party complaint,

answer to third-party complaint, and replies when ordered by the court.  <u>See</u> Fed. R. Civ. P. 7(a).  Thus, "motions, affidavits, briefs, and other documents outside the pleadings are not subject to Rule 12(f)."  <u>Sweigert</u>, 2021 WL 4295262, at *2 (quoting another source).  The Second Circuit has cautioned against striking pleadings without a strong reason for doing so.  <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976).

Here, the Court is not persuaded that the requested information should be stricken.  The Court does not find that Rule 12(f) properly applies to the motions and affidavit exhibits at issue.  Additionally, sealing is sufficient to preserve any privacy interests in the Alleged Settlement Documents.  Therefore, the Motion to Strike is DENIED.

### C.  <u>Motion for P.O. and Cross-Motion to Compel</u>

Borealis argues that the information ETG seeks regarding the SM Funds and any subsequent KKR-Borealis transactions is irrelevant to ETG's claims and unduly burdensome.  Memo iso P.O.  ETG counters that the Torres Order found that the scope of the RSA is ambiguous so the information regarding all funds between KKR-Borealis should be discoverable.  Memo iso Cross-Motion at 6.  ETG further argues that a ruling limiting discovery would preclude ETG from "being able to prove . . . the full extent of KKR's financing of Borealis and the full amount of breach of contract damages[.]"  <u>Id</u>. at 4.

1. **Relevance**

ETG specifically argues that the information sought regarding subsequent KKR-Borealis funds is relevant because ETG must prove which investment funds KKR has provided financing for, how much carried interest the funds have generated or are projected to generate, and why the financing of the funds should be seen as multi-tranche "financing," as defined by the RSA.  Memo iso Cross-Motion at 22. Borealis counters that discovery should be limited to the EM Funds based on contractual arguments.  Memo iso P.O. 22-27.   Further, Borealis argues that if discovery is permitted over subsequent KKR-Borealis funds, then ETG could also seek to compel discovery over any transactions negotiated from now throughout the pendency of the case.  Id. at 14 ("What about XYZ1 fund in 2025?").

Regarding the Torres Order, ETG argues that District Judge Torres found that ETG's reading of the RSA was plausible in denying Borealis' motion to dismiss the action.   Memo iso Cross-Motion at 26.  Borealis responded that while the Torres Order was issued in response to a motion to dismiss, and bound by the four corners of the complaint, the Court may consider other evidence in deciding discovery motions.  Memo iso P.O. at 21.

On balance, the Court believes that the information sought regarding subsequent KKR-Borealis transactions is most relevant to the issue of damages and only minimally relevant to substantive arguments regarding the scope of the RSA.

## 2. Burden

Borealis estimates that production of the requested information would add no less than six months to the discovery timeline and cost at least $400,000-500,000 to complete. Memo iso P.O. at 16. Borealis also reiterates that they could be required to supplement discovery production at anytime during the pendency of this litigation if another KKR-Borealis transaction is consummated. Id. ETG counters that the information sought is proportional to the needs of the case considering the importance of the issues at stake, the amount in controversy, the Parties' relative access to information regarding the funds, and the importance of the discovery in resolving issues. Memo iso Cross-Motion at 23-24. ETG further states "issues of liability, and most certainly damages, cannot be fairly resolved without the information sought." Id. at 24.

Having reviewed the submissions and arguments raised, this Court does not believe that any relevance would outweigh the burdens of production at this stage. In this Court's view, ETG's contractual arguments about the scope of the RSA do not require further discovery on KKR-Borealis funds and the requested information goes most crucially to damages. ETG asks that this Court not "decide issues that go to the merits on these cross-motions." Dkt. No. 82 at 13. This Court need not do so in staying discovery on subsequent funds until a dispositive ruling is made. Therefore, this Court GRANTS Borealis' request and issues a temporary protective order such that information regarding further KKR-Borealis funds will only be discoverable after a dispositive ruling that the scope of the RSA does cover such funds.

15

The Conference previously scheduled for December 20, 2023 is adjourned *sine die.* **The Clerk of the Court is respectfully requested to close the motions at Dkt. Nos. 63, 68, 71, 74, 83, 86, 87, 89, 92, 108, 109, 119, and 128.**

SO ORDERED.

DATED:     New York, New York
           December 18, 2023

_____
JENNIFER E. WILLIS
United States Magistrate Judge

16