**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
ENERGY TRANSPORTATION GROUP, INC.,

                                 Plaintiff,                    **ORDER**

                      -against-                     **21-CV-10969 (AT) (JW)**

BOREALIS MARITIME LIMITED,

                                Defendant.
-----------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

      The Court is in receipt of a series of motions filed from April 17 through May 20, 2024. Included in those filings are multiple motions to seal which the Court will address at a later time. The Court is also in receipt of Plaintiff's request to submit a declaration in support of its motion to reconsider. That request is **GRANTED**, and counsel is to file the declaration by **June 18, 2024**. The remaining motions are decided as follows:

      I.      Borealis' Motion for a Protective Order.

      On April 17, 2024, Defendant Borealis Maritime Limited ("Borealis") filed a letter motion requesting a protective order. Dkt. No. 166. The proposed order seeks to prevent Plaintiff Energy Transportation Group, Inc. ("ETG") from obtaining discovery regarding a revenue sharing agreement between Christoph Toepfer and Kon-Tiki Maritime Limited (the "KT Agreement"). Id. Plaintiff ETG's position is that Toepfer should not have received any payments under the KT Agreement and those payments should be added back to the profits of the EM Funds for calculation of the caried interest Plaintiff ETG is owed. Dkt. No. 169. To gain information on

the extent of the payments received, Plaintiff ETG is seeking bank statements, deposit receipts, and Christof Toepfer's communications with Osman Levent Karsan and Romain Barard from Toepfer's personal devices. Id.

Defendant Borealis argues that discovery on additional documents is irrelevant because nothing other than the KT Agreement itself is needed to understand the payments. Dkt. No. 166. In response, Plaintiff ETG speculates that while the KT Agreement is self-evident, more documents evincing similar payments could exist. Dkt. No 169. Pursuant to the Federal Rules of Civil Procedure "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). The Court is not persuaded that the requested bank statements, deposit receipts, and communications from Toepfer's personal devices sought will lead to relevant evidence and Plaintiff ETG's letter does not cure that uncertainty. Instead, Plaintiff ETG merely asserts it is "quite possible" relevant evidence exists and theorizes that individuals involved "likely used personal email or text messages, or phone calls, to communicate…." Dkt. No. 169. Plaintiff ETG's support for the discovery is entirely speculative and seeks to go on an impermissible fishing expedition. See Loma Deli Grocery Corp. v. U.S., No. 20-CV-7236 (JPC), 2021 WL 4135216, at *12 (S.D.N.Y. Sept. 10, 2021)

Borealis also asserts that additional discovery would be unduly burdensome given any alleged payments from the KT Agreement would only add $30,000 in additional damages. Dkt. No. 166. Defendant Borealis estimates that legal fees and

costs for such voluminous discovery "could easily cost over $350,000 and add four to six months" of additional time to complete discovery. Id. Plaintiff ETG contends that the estimated $350,000 cost of discovery from Defendant Borealis is overstated, unable to be determined until discovery is complete, and that "'proportionality' should not be measured by dollar value alone." Dkt. No 169. A court may limit the scope of discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Even if overstated as Plaintiff ETG claims, the sizable difference between the possible damages in relation to the cost of discovery warrants granting the protective order. For the reasons stated above, Defendant Borealis' motion for a protective order is **GRANTED**.

    II.    ETG's April 17 Letter Request

On April 17, 2024, Plaintiff ETG filed a letter request seeking resolution of three discovery issues: 1) discovery of DD Holding's bank statements, deposit receipts, and Toepfer's personal communications; 2) an amendment to the confidentiality agreement; and 3) Defendant Borealis' refusal to answer interrogatories concerning damages. Dkt. No. 167.

A. Additional Discovery on the KT Agreement

In light of the Court's ruling on Dkt. No. 166 detailed above, Plaintiff ETG's request for a conference on this matter is **DENIED** as moot.

B. Amending the Confidentiality Agreement

The Parties are directed to meet and confer and submit a joint status update by **June 28, 2024.** See infra Section IV at 5–7.

C. Interrogatories On Damages

Plaintiff ETG claims that it has produced interrogatories on the topic of damages to Defendant Borealis who "mostly" refuses to answer those interrogatories. Dkt. No. 167. Defendant Borealis' acknowledges receiving the interrogatories but flags for the court that the Parties have not adequately held a meet and confer on the issue. Dkt. No. 173. The Parties are ordered to meet and confer on this issue and file a joint status update on whether the issue is resolved by **June 28, 2024**.

III.   Borealis' Motion to Compel the Fuchs Communications

On May 7, 2024, Defendant Borealis filed a letter motion to compel the production of documents involving Frithjof Fuchs ("Mr. Fuchs"). Dkt. No. 181. First, Defendant Borealis points out that Mr. Fuchs is not an employee of Plaintiff ETG and therefore the attorney-client privilege does not apply. Id. Then Defendant Borealis asserts that even if the communications may have been privileged, Plaintiff ETG waived such privilege when it produced several emails between Mr. Fuchs and ETG's counsel. Id. Plaintiff ETG argues that communications from ETG's counsel—where Mr. Fuchs was a sender or recipient—are privileged because Mr. Fuchs was a "business partner" of ETG, but does not address the issue of waiver in their response. Dkt. No. 184.

A party may not "use attorney-client privilege as both a sword and a shield by partially disclosing only the privileged documents it so chooses while shielding other unfavorable privileged documents on the same subject matter." Regeneron Pharm., Inc. v. Merus B.V., No. 14-CV-1650 (KBF), 2014 WL 11344040, at *4 (S.D.N.Y. Dec.

4

5, 2014) (internal citation omitted). A party who voluntarily discloses privileged documents waives such privilege on remaining documents concerning the same subject matter. Id.; see also Fullerton v. Prudential Ins. Co., 194 F.R.D. 100, 103 (S.D.N.Y. 2000). Here, although Mr. Fuchs was likely not an agent of Plaintiff ETG, the Court acknowledges the unusual relationship between them. However, given Plaintiff ETG has already intentionally produced what they claim to be privileged communications between ETG's counsel and Mr. Fuchs, any claim to privilege has been waived. See Regeneron Pharm., Inc., 2014 WL 11344040, at *4. Therefore, Defendant Borealis' motion to compel production of the Fuchs communications is **GRANTED**. Plaintiff ETG is ordered to produce the requested documents by **June 21, 2024**.

    IV.    KKR's Motion to Quash the Subpoena

On May 14, 2024, non-party Kohlberg Kravis Roberts & Co. ("KKR") filed a letter motion seeking to quash a Rule 30(b)(6) deposition that was served by Plaintiff ETG covering 17 topics. Dkt. No. 186. After several meet and confers, Plaintiff ETG suggested narrowing the topics and conducting a document custodian deposition to establish authenticity of certain documents. Id. KKR then offered to provide Plaintiff ETG with a business record certification in lieu of a deposition—ETG declined. Id.

Non-party KKR argues that the 17 topics Plaintiff ETG initially sought to explore at the deposition are overly burdensome for two reasons. Id. First, KKR claims that as a non-party it would be unduly burdensome to have KKR incur the costs to educate a witness on 17 topics concerning events from a decade ago. Id.

5

Second, KKR highlights that the subpoena was issued on April 25, 2024, just 12 business days before the May 15, 2024, fact discovery deadline which does not allow adequate time to prepare a witness. Id. Plaintiff ETG states that they have done everything possible to alleviate any burden by significantly reducing the deposition topics from 17 down to the admissibility of the KKR documents. Dkt. No. 190.

Non-party KKR then asserts that Plaintiff ETG has not established that the discovery sought is relevant but instead acknowledges it is only an attempt to preempt any admissibility challenges of the KKR documents in court. Dkt. No. 186. Plaintiff ETG counters that the questioning is relevant to shed light on the term "financing" found in the revenue sharing agreement and determine the scope of the agreement. Dkt. No. 190. The relevance of the underlying documents and the authenticity or admissibility of those same documents are separate legal analysis. Plaintiff ETG's argument attempts to explain the relevance of the underlying documents but not the relevance of obtaining testimony of the 30(b)(6) witness. Assuming arguendo that the testimony is relevant, this Court still finds that requiring a non-party to make a witness available solely to authenticate documents raises proportionality concerns.

While the Court agrees with ETG that the narrower admissibility deposition would be less burdensome than their expansive initial 30(b)(6) notice, the question of proportionality remains. Plaintiff ETG claims that they now only seek "to ensure that a few business records of KKR…are admissible in evidence pursuant to FRE 803(6)." Dkt. No. 190. Admissibility can be achieved in multiple ways. The least

6

burdensome way would be through a certification that does not require the time and expense of an actual witness being deposed. In the absence of any rationale for why a certification does not suffice, this Court can only conclude that even the limited admissibility deposition is disproportionate to the needs of the case. Therefore, the Parties are directed to meet and confer about potential certification and provide the Court with a joint status letter by **June 28, 2024**.

V.     Request for International Judicial Assistance

On May 15, 2024, Defendant Borealis filed a letter motion seeking the testimony of Mr. Fuchs pursuant to 28 U.S.C. § 1781(b) and the Hague Convention. Dkt. No. 187. Defendant Borealis asserts that given Plaintiff ETG's refusal to produce the Fuchs communications, they are alternatively seeking testimony from Mr. Fuchs on those same communications. Id. Plaintiff ETG argues that Defendant Borealis' request was ill-timed, will be extremely costly, and indicated that Mr. Fuchs would likely consent to voluntarily attending a deposition. Dkt. No. 193. Given the Court's granting of the motion to compel the Fuchs communications, this request is **DENIED** as moot. See supra Section III at 4–5. Furthermore, the Court would not be inclined to grant this request given Defendant Borealis' failure to seek a voluntary deposition first.

VI.    ETG's Motion to Compel Regarding the 30(b)(6) Deposition

On May 15, 2024, Plaintiff ETG filed a letter asking this Court to compel KKR to produce emails in response to a subpoena duces tecum and comply with the 30(b)(6) deposition. Dkt. No. 189. The request to compel KKR to comply with the 30(b)(6)

deposition is **DENIED** as moot. See supra Section IV at 5–7. On the production of emails, as KKR highlights, ETG amended the scope of documents they were seeking at 5:11p.m. the day before discovery was set to close. Dkt. No. 191. Given the untimeliness of ETG's request for additional documents, that request is **DENIED**.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 166, 181, 187, and 189.**

SO ORDERED.

DATED:   New York, New York
         June 14, 2024

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge