**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ENERGY TRANSPORTATION GROUP, INC.,

                Plaintiff,            **ORDER**

      -against-                **21-CV-10969 (AT) (JW)**

BOREALIS MARITIME LIMITED,

                Defendant.
-----------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

On March 22, 2024, this Court issued an order denying Plaintiff's ("Energy Transportation Group, Inc." or "ETG") motion for reconsideration of the Court's December 18, 2023 order ("Prior Order"). Dkt. No. 150. On or about April 3, 2024, non-party Kohlberg Kravis Roberts & Co. ("KKR") produced documents to ETG that purportedly reveal discussions regarding the possibility of financing the Stanley Maritime I and II Funds ("SM Funds"). Dkt. No. 155. ETG now seeks a second reconsideration of this Court's Prior Order because of the emails KKR has recently produced. Dkt. Nos. 154–55. Defendant ("Borealis Maritime Limited" or "Borealis") contends that ETG is only entitled to one motion for reconsideration and fails to raise any new arguments. Dkt. No. 174. For the reasons discussed below, ETG's second motion for reconsideration is **DENIED**, but Borealis is ordered to pay ETG's reasonable attorneys' fees and costs related to this motion.

## BACKGROUND

The facts of this case are described in detail in multiple prior orders from this Court. See Dkt. Nos. 137, 150. For brevity, the following is a recitation of only facts relevant for this order.

This is an action arising from an alleged breach of a revenue sharing agreement between Plaintiff ETG and Defendant Borealis for which discovery closed on May 15, 2024. Dkt. Nos. 13, 179. On June 20, 2023, during discovery, Defendant Borealis represented to the Court that a Protection Order for discovery regarding the SM Funds should be issued because the link between the introduction of Borealis to Miller Buckfire and the conception of the SM Funds was "far too remote." Dkt. No. 64 at 18. Defendant Borealis was adamant that "[n]either Miller Buckfire nor ETG have any involvement with the SM Funds" and questioned whether non-issuance of the protective order would entitle Plaintiff ETG to discovery on more unrelated funds in the future. Id. at 8. Defendant Borealis even went as far as providing the Court with a chronological timeline of events where neither of the SM Funds are mentioned until November 2017—the time when Borealis supposedly marketed SM I to KKR. Id. at 19–20.

On July 5, 2023, Plaintiff ETG filed a cross-motion to compel Defendant Borealis to produce emails surrounding the SM Funds. Dkt. No. 68. Plaintiff ETG argued that the funds were covered by the revenue sharing agreement because they were a product of the introduction between Defendant Borealis and Miller Buckfire—which led to KKR financing the SM Funds. Dkt. No. 69 at 25.

On December 18, 2023, this Court issued an order temporarily granting Defendant Borealis' protective order and denying Plaintiff ETG's motion to compel. Dkt No. 137 at 15. The Court informed the Parties that discovery on the SM Funds would only be discoverable if a dispositive ruling reasoned that they could fall within the scope of the revenue sharing agreement. Id. Plaintiff ETG then filed a motion to reconsider which was denied. Dkt. No. 150. On or about April 3, 2024, non-party KKR produced documents to Plaintiff ETG which included a March 27, 2013 email from Defendant Borealis to KKR about "a shipping debt fund idea…." Dkt. Nos. 155, 199. The aforementioned email included an attached PowerPoint presentation detailing why there was a market for the debt fund, an execution model for the debt fund, possible financing terms, and a description of the Borealis team. Dkt. No. 199 Ex. B. As a result, Plaintiff ETG filed another motion for reconsideration. Dkt. No. 154. In opposing the second motion for reconsideration, Defendant Borealis states they "did not deliberately withhold these communications" and "[t]o put it simply: data loss happens." Dkt. No. 174 at 8.

## LEGAL STANDARDS

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Catskill Dev., L.L.C. v. Park Place Ent. Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. New York City Dept. of Soc. Servs., 709 F.2d 782, 789 (2d Cir.1983)). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data

that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Lesch v. United States, 372 F. App'x 182, 183 (2d. Cir. 2010) (citation and internal quotation marks omitted). "Thus, a motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." Id. Moreover, "[a] litigant is entitled to a single motion for reconsideration." Guang Ju Lin v. United States, No. 13-CV-7498 (SHS), 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015).

Judges possess broad discretion in resolving discovery issues and sanctions pursuant to Rule 37 fall within that discretion. See City of Almaty, Kazakhstan v. Ablyazov, No. 15-CV-5345 (AJN), 2021 WL 4846366, at *2 (S.D.N.Y. Oct. 18, 2021). Courts also routinely recognize "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." Seena Intl., Inc. v. One Step Up, Ltd., No. 15-CV-01095 (PKC) (BCM), 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016); Cardwell v. Davis Polk & Wardwell LLP, No. 1:19-CV-10256 (GHW), 2021 WL 2650371, at *2 (S.D.N.Y. June 28, 2021); Uttarwar v. Lazard Asset Mgt. LLC, No. 22-CV-8139 (DEH), 2024 WL 1500980, at *3 (S.D.N.Y. Mar. 22, 2024). Rule 37 provides that the disobedient party must show its failure was "substantially justified." Fed. R. Civ. P. 37.

## DISCUSSION

Plaintiff ETG, under the guise of asking for reconsideration of the Court's March 22, 2024 order, is unambivalently asking for a second reconsideration of the

Court's December 18, 2023 order. In addition, while neither party directly asks this Court to sanction the other, both clearly allude to the fact that the Court should consider doing such.

I. Plaintiff's Motion for Reconsideration

Plaintiff ETG argues reconsideration is warranted because the newly produced emails from KKR undermine Defendant Borealis' assertion that the SM Funds were not contemplated until 2017 and support ETG's theory that the SM Funds are covered by the revenue sharing agreement. See generally Dkt. Nos. 155, 176. Plaintiff ETG further asserts that not allowing discovery on the SM Funds will put them at a disadvantage while defending summary judgment. Dkt. No. 155 at 8. Defendant Borealis contends that ETG's motion is procedurally improper as courts do not permit multiple motions for reconsideration of the same order. Dkt. No. 174 at 3. In addition, Defendant Borealis asserts that Plaintiff ETG's second motion for reconsideration, if allowed, improperly rehashes arguments this Court has already rejected. Id. at 4–7.

The Court agrees that Plaintiff ETG is not entitled to another motion for reconsideration. See Guang Ju Lin, 2015 WL 747115, at *2. The Court acknowledges that ETG only recently received the emails, but new documents in support of former failed arguments do not warrant reconsideration unless it would alter the Court's decision. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that

5

might reasonably be expected to alter the conclusion reached by the court."). Plaintiff ETG already made the argument that Defendant Borealis was not truthful regarding the contemplation of the SM Funds in its initial cross-motion to compel discovery on those funds. Dkt. No 69 at 16 ("In fact, Toepfer and Miller Buckfire had discussed Borealis' 'debt fund idea' as early as December 2012."). Plaintiff ETG also already argued that not allowing discovery on the SM Funds would deny "ETG a fair opportunity to oppose Defendant's summary judgment motion." Dkt. No. 140 at 4.

Assuming arguendo that Plaintiff's second motion for reconsideration is procedurally permitted (which it is not), it does not change this Court's refusal to define the scope of the revenue sharing agreement. While the Court in the December 18, 2023 order referenced the purported timeline of the SM Funds provided by Defendant Borealis, that was not the determining factor in the Court's decision to grant the temporary protective order. Instead, the Court articulated that "information regarding further KKR-Borealis funds will only be discoverable after a dispositive ruling that the scope of the RSA could cover such funds." Dkt. No. 150 at 5; see also Dkt. No. 137 at 15. Therefore, no new facts on the argument that Defendant Borealis was untruthful about the contemplation of the SM Funds would "reasonably be expected to alter the conclusion reached by the court." See Shrader, 70 F.3d at 257. Thus, Plaintiff ETG's second motion for reconsideration is **DENIED**.

II. Defendant's Failure to Produce the Emails

Plaintiff ETG, in its second motion for reconsideration, requests that the Court require Defendant Borealis to answer a series of questions concerning their failure to

produce or preserve the emails recently produced by KKR. Dkt. No. 155 at 9–10. Plaintiff ETG also states while they are "not seeking sanctions per se at this time" the Court should use its authority under rule 37 to hold Defendant Borealis accountable. Id. at 8. Defendant Borealis, relying on Orbit One Commun., Inc. v. Numerex Corp., counters that the loss of the emails is not sanctionable because there is no evidence that: the emails were relevant; Borealis had an obligation to preserve the emails when they were destroyed; and Borealis had a culpable state of mind when destroying them. Dkt. No. 174 at 8. Defendant Borealis then asserts if anyone should be sanctioned it should be Plaintiff ETG for filing a "fruitless" motion in an attempt to delay resolution of this matter. Id. at 9.

The Court declines to have Defendant Borealis answer the set of questions proposed by Plaintiff ETG. Pending a dispositive ruling on summary judgement, answers to the questions proposed by Plaintiff ETG bear no relevance on this second motion for reconsideration. The Court also declines to sanction Plaintiff ETG for filing a second motion for reconsideration. While Plaintiff ETG is only entitled to a single motion for reconsideration, they would not have filed a second motion if Defendant Borealis produced the aforementioned emails.

Defendant Borealis incorrectly relies on Orbit One Commun., Inc. v. Numerex Corp., which provides a list of factors when a party is seeking an adverse inference instruction to a jury based on the spoliation of evidence—not factors to be used in a judge's broad discretion to impose sanctions. See 271 F.R.D. 429, 436 (S.D.N.Y. 2010). In fact, Orbit One Commun., Inc. v. Numerex Corp. provides while a party may be

7

sanctioned for violating an order to produce evidence because the evidence was destroyed, "a court may impose discovery sanctions even absent an order pursuant to its inherent power to manage its own affairs."

Although the Court did not grant Plaintiff ETG's cross-motion to compel discovery on the SM Funds, sanctions under Rule 37 do not require the violation of a court order.  See Hedgeye Risk Mgt., LLC v. Dale, No. 21-CV-3687 (ALC) (RWL), 2023 WL 4760581, at *2 (S.D.N.Y. July 26, 2023).  Defendant Borealis, instead of offering a compelling reason for the missing emails and the PowerPoint that would have likely been stored elsewhere, seemingly scoffs at the void of what should have been produced, calling it "unsurprising" and justifies it with "[t]o put it simply: data loss happens."  The Court does not find "data loss happens" as a "substantially justified" explanation for the missing emails which has now led to both Parties having to complete additional briefing.  Therefore, Defendant Borealis is ordered to ordered to pay Plaintiff ETG's reasonable attorneys' fees and cost related to this motion.

## CONCLUSION

For the reasons stated above, Plaintiff ETG's second motion for reconsideration is **DENIED**.  However, Defendant Borealis is ordered to pay ETG's reasonable attorneys' fees and costs related to the second motion for reconsideration.  ETG is to file proof of the expenses related to this motion.  Although, such proof should not be filed until a dispositive decision on the merits of this case has been entered once all other damages and/or fees are being determined.

**The Clerk of Court is respectfully requested to close Dkt. No. 154.**

SO ORDERED.

DATED:   New York, New York
           June 18, 2024

                                                                                 _____
                                                                                 JENNIFER E. WILLIS
                                                                                 United States Magistrate Judge