UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

| | | |
|---|---|---|
| ENERGY TRANSPORTATION GROUP, INC. | : | |
| Plaintiff, | : | |
| -against- | : | Case No. 1:21-cv-10969-CM-JW |
| BOREALIS MARITIME LIMITED, | : | |
| Defendant. | : | |

--------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO BAR EVIDENCE RELATING TO BOREALIS' PERFORMANCE OF ITS OBLIGATIONS TO THE KKR-FINANCED FUNDS**

LLOYD S. CLAREMAN
12 East 49th Street, 11th Floor
New York, NY 10017
Tel. No. (917) 913-0988
lloyd.clareman@clareman.com

Attorney for Plaintiff
Energy Transportation Group, Inc.

**Table of Contents**

Table of Authorities . . . . . ii

Preliminary Statement . . . . . 1

Facts Relevant to this Motion . . . . . 1

Why the Relief Requested is Necessary . . . . . 2

Argument . . . . . 3

Point One: Borealis' "Intervening Act" Theory is Legally and Logically Flawed . . . . . 3

Point Two: Freedom of Contract Requires the RSA to be Enforced According to its Terms . . . . . 5

Conclusion . . . . . 5

# Table of Authorities

## Cases

*159 MP Corp. v. Redbridge Bedford, LLC,* 33 N.Y.3d 353, 128 N.E.3d 128 (2019) . . . . . . . . . . . .5

*Hain v. Jamison*, 28 N.Y.3d 524, 68 N.E.3d 1233 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Mazella v. Beals*, 27 N.Y.3d 694, 57 N.E.3d 1083 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
86 N.Y.2d 685, 660 N.E.2d 415 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Statutes and Rules

Federal Rule of Evidence 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Evidence 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Preliminary Statement

This Memorandum of Law is respectfully submitted by Plaintiff Energy Transportation Group, Inc. ("ETG") in support of its motion in limine to bar Defendant Borealis Maritime Limited ("Borealis") from presenting evidence relating to the quality of the work it performed on behalf of the Embarcadero Maritime ("EM") funds, or the Stanley Maritime ("SM") funds.

## Facts Relevant to this Motion

Most elements of this breach of contract case are undisputed. There is no dispute concerning the existence and validity of the written contract called the Revenue Sharing Agreement ("RSA") between ETG and Borealis. (PX-19, Clareman Dec. Ex. A.) Nor does Defendant dispute the full performance of ETG's obligations thereunder. (Clareman Dec., ¶2) And Borealis has been found to have committed a breach of the RSA by failing to pay ETG its share of carried interest for the first EM Fund ("EM1"). (ECF No. 269, at pp. 9-12, Clareman Dec. Ex. B.)

That leaves only two issues for the jury to decide. First, what is the scope of the RSA: more specifically, which "Financings" beyond EM1 does the RSA encompass? And second, what amount of damages is ETG entitled to recover?

Since all but $400,576 of ETG's total $4,870,740 in damages are not genuinely in dispute if liability is proven,[1] the only substantial issue for the jury in this case is the scope of the RSA, which was dated August 1, 2012 but signed two months later. (PX-19, Clareman Dec. Ex A.)

---

[1]Notwithstanding Defendant's refusal to stipulate to any of Plaintiff's damages figures, there is little in dispute. ETG's damages for the EM Funds are derived from calculations in the expert report of Ryan Ford, Borealis' employee/expert (PX-77, Clareman Dec. Ex. C). Its Stanley Maritime ("SM") Fund damages are taken from Borealis' interrogatory answers. (PX-98, Clareman Dec. Ex. D) ETG's calculation of $3,976,897 in Class D carried interest damages for the three EM Funds is undisputed. While Borealis disputes the characterization of "exit fees" for EM 2/3 and the Class C interest in EM1 as carried interest, there is no dispute regarding the damages figures of $75,670 for EM1 exit fees, $186,689 for EM2 exit fees, and $138,217 for EM1 Class C. (PX-77) Mr. Ford did not dispute ETG's SM damages in his rebuttal report. (*Id.*)

Borealis did not start to receive "Financing" from Kohlberg, Kravis & Roberts ("KKR") until almost a year after the RSA was drafted, negotiated and signed. (PX-36, Clareman Dec. Ex. E) As a matter of chronology alone, neither the quality of Borealis' performance – *i.e.,* its ability to invest KKR's Financing in maritime assets and then manage them in 2013 and subsequent years – nor the amount of work it performed in doing so, can have anything to do with the scope of the RSA that was executed in 2012. The scope of the RSA, although disputed, was what the parties intended in 2012, when the contract was formed. At the time the RSA was negotiated in 2012, the parties fully understood and expected that Borealis would be performing "99% of the work." (PX-12, Clareman Dec Ex F) Borealis used that argument, among others, to negotiate ETG's share of carried interest down, from ETG's proposed 15% to the eventual 7.5% provided in the RSA. (*Id.*)

**Why The Relief Requested Is Necessary**

Borealis proposes to put an irrelevant and legally inapplicable theory before the jury, namely that its performance of its obligations as manager of various KKR-financed funds is an intervening act that breaks the chain of proximate causation between KKR's initial investment in EM1 – which is conceded to be a Financing under the RSA (Clareman Ex. B, p. 12) – and KKR's subsequent Financings. (Clareman Dec., ¶2) In connection therewith, Borealis has submitted an exhibit list with 352 prospective Defendant's Exhibits. (ECF No. 289-5, Clareman Dec. Ex. G) Most of these exhibits, and much of the related testimony, would have the sole purpose of supporting Defendant's argument that its performance investing and managing money from KKR is an intervening act that breaks this chain.

This Memorandum will show that Borealis' theory of a break in proximate causation, due to the intervening act of Borealis' strong performance, does not survive legal scrutiny. That is because an intervening act must be something that was unexpected and unforeseeable. Here, both

the quality and quantity of Borealis' work was exactly what the parties not only expected, but hoped would occur. Borealis' argument about the quality and quantity of its performance somehow being an intervening act that breaks the chain of proximate cause, would mislead the jury by inviting it to misinterpret the RSA based upon the "99% of the work" concept espoused by Toepfer (PX-12) (Clareman Dec. Ex. F). In fact, ETG's compensation was based on "the support you [Chen] are giving, and the doors you opened," (*Id.*) and was agreed to by the parties with full knowledge that Borealis would do 99% of the work (if not more) – while retaining, for Borealis, 100% of the management fees, and 92.5% of the carry. (PX-19, Clareman Dec. Ex. A)

The large amount of evidence Defendant intends to use to support its flawed "intervening act" argument would consume an inordinate amount of trial time. It should be excluded under Federal Rule of Evidence ("FRE") 401 as irrelevant; and/or pursuant to FRE 403, because its purported relevance "is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay [and] wasting time…."

**ARGUMENT**

**Point One: Borealis' "Intervening Act" Theory is Legally and Logically Flawed**

Borealis' capable performance of its duties in the early days of the EM Funds and thereafter is not an "intervening act" that breaks the chain of causation between KKR's Financing of EM1 (which is conceded to be proximate to ETG and MB) and KKR's ensuing Financings of EM2, EM3 and the SM Funds. Borealis' performance is exactly what all of those parties fully expected and hoped would occur. ETG, through Kimball Chen, recommended and promoted Christoph Toepfer of Borealis precisely because he thought Toepfer would do a good job. (Chen testimony) MB signed the Capital Raising Agreement with Borealis and promoted Borealis to 50 private equity firms because MB believed in Borealis' capabilities and promise. (PX-9, PX-10, PX-20,

Clareman Dec. Exs. H, I, J) KKR provided Financing to Borealis for the same reason. (PX-23, PX-27) (Clareman Dec. Exs. K, L) In short, Borealis' performance was what everyone hoped for, and expected. Thus, it cannot be an "intervening act" that breaks the chain of proximate causation.

In the negligence context, the law of New York is that "[o]nly where "the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct," may it possibly "break[ ] the causal nexus") *Mazella v. Beals*, 27 N.Y.3d 694, 706, 57 N.E.3d 1083, 1091 (2016) (citations omitted); see also *Hain v. Jamison*, 28 N.Y.3d 524, 529, 68 N.E.3d 1233, 1237 (2016) "[w]hen a question of proximate cause involves an intervening act, "'liability turns upon whether the intervening act is a *normal or foreseeable consequence* of the situation…." (italics in original)

While this case involves a breach of contract rather than negligence, this law should apply. There is a difference between asserting (a) that proximate cause is lacking – which Borealis is free to try to prove with other arguments, if any; and (b) that Borealis' performance "breaks the chain of proximate causation." The latter necessarily invokes the law respecting intervening acts.

It is both illogical and contrary to New York law for Borealis to contend that its performance, in line with everyone's expectations, is an intervening act that breaks the chain of proximate cause between MB's success in obtaining $100 million in initial Financing for Borealis from KKR, and KKR's "follow-on" Financing to Borealis, as both were provided pursuant to the five-year "Joint Venture" between KKR and Borealis. MB had told Borealis, early on, that "unless we can show hedgefunds and PE [private equity] scale to reach min US$500m, we will fail to get their attention." (PX-7, Clareman Dec. Ex. M) And when KKR sent Borealis a term sheet reflecting the key aspects of its proposed investment, it included a five-year, exclusive "joint venture" relationship with Borealis, and required that Borealis agree to a "KKR option to follow-

on with additional capital at terms consistent with this arrangement if opportunity warrants." (PX 26, Clareman Dec. Ex. N) The fact that Borealis performed well is not an intervening act, because it was the opposite of "not foreseeable in the ordinary course of events." *Mazella,* 27 N.Y.3d at 706. Borealis should not be permitted to argue or present evidence in support of this theory.

**Point Two: Freedom of Contract Requires the RSA to be Enforced According to its Terms.**

The RSA should be enforced according to the scope of ETG's compensation that the jury finds to have been intended by the parties, without regard to other factors. As stated in the Court's decision denying Borealis' motion for summary judgment, "Such an agreement may or may not be typical, but '[a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish,'" *quoting Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 67–68 (1978). *See also 159 MP Corp. v. Redbridge Bedford, LLC,* 33 N.Y.3d 353, 128 N.E.3d 128 (2019) ("[f]reedom of contract between sophisticated parties is a 'deeply rooted' public policy of New York State 'and a right of constitutional dimension'"; *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 695, 660 N.E.2d 415, 421 (1995) ("Freedom of contract prevails in an arm's length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain. If they are dissatisfied with the consequences of their agreement, 'the time to say so [was] at the bargaining table.'")

**Conclusion**

For the foregoing reasons, Plaintiff ETG respectfully submits that its motion in limine to exclude Borealis' intervening act argument relating to its performance in investing and managing the KKR-financed EM and SM Funds, and evidence relating thereto, should be granted.

Dated: September 14, 2026

LLOYD S. CLAREMAN

/s/ Lloyd S. Clareman

12 East 49th Street – 11th Floor
New York, New York 10017
Tel. No. (917) 913-0988
Lloyd.clareman@clareman.com

Attorney for Plaintiff
Energy Transportation Group, Inc.