UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ENERGY TRANSPORTATION GROUP, INC. :

Plaintiff, :

-against- : Case No. 1:21-cv-10969-CM-JW

BOREALIS MARITIME LIMITED, :

Defendant. :

---------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE (ECF NO. 299) TO PRECLUDE "GAP PERIOD" EVIDENCE**

LLOYD S. CLAREMAN
12 East 49th Street, 11th Floor
New York, NY 10017
Tel. No. (917) 913-0988
lloyd.clareman@clareman.com

Attorney for Plaintiff
Energy Transportation Group, Inc.

**Table of Contents**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts Relevant to this Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Point One: The Temporal Gap in Borealis' Production is Relevant. . . . . . . . . . . . . . . . . . . . . . . . . 4

Point Two: FRE 403 Should Not Shield Borealis From the Consequences of its Own Conduct in Connection with the Gap Period . . . . . . . . . . . . . . . . . . . . . . . . .5

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

# Table of Authorities

## Statutes and Rules

Federal Rule of Evidence 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Preliminary Statement**

This Memorandum of Law is respectfully submitted by Plaintiff Energy Transportation Group, Inc. ("ETG") in opposition to the motion in limine of Defendant Borealis Maritime Limited ("Borealis") to preclude reference to Borealis' loss of emails for the critical time period from February 23, 2013 to November 17, 2013 (the "Gap Period").

The self-serving narrative of the Gap Period set forth in Borealis' Brief – which fails to mention that Borealis was sanctioned pursuant to Rule 37 for its dismissive response to ETG's concerns about it – will be corrected in this Memorandum.

The Gap Period was a crucial time in the chronology of this case. The jury is likely to wonder why there aren't more emails from that period that reflect Borealis' internal discussions of the KKR Financings that were imminent, contemplated, and foreseeable. The reason is that they were lost by Borealis. Borealis scoffed (the word the Court would later use) at ETG's attempts to inquire about this. The jury should be informed that Borealis' emails from the Gap Period have never been available to ETG. ETG has no objection to Borealis providing evidence supporting its contention that the loss was inadvertent. But the loss exists, and it matters.

**Facts Relevant to this Motion**

On March 5, 2013, in advance of a call between counsel that occurred a few days later, ETG's sent Borealis' counsel a proposed agenda that included a description of the Gap Period problem, and asked, "[c]an you figure out why these gaps are present, and how/when they can be remedied?" (Clareman Dec. Ex A, ¶4).

On March 8, 2013, during the ensuing phone call, Borealis' counsel stated that she had no explanation for the gap and that she was not going to look for one. She asserted that emails from this period were not relevant. She further stated that the metadata used by e-discovery software

(in this case, Relativity) to sort large quantities of email into chronological order "isn't perfect," and that there are six different columns of date-related data. She suggested that ETG's counsel probably was confused by the multiple types of date-related metadata. (Clareman Dec. ¶2)

On March 10, 2023, ETG's counsel sent an email to Borealis' counsel saying that he thought it unlikely that the multiple date-related columns were the problem, and further stating:

> I am also informed that it is unlikely that metadata would be corrupted if the document to which it relates was recoverable. So, although I readily confess that I lack any sort of deep technological expertise beyond the mere ability to use the program, I find these gaps perplexing. However, given your position that metadata is not entirely reliable, I will defer my further comments on what appears to be missing until I've gone through all the documents, which will take some time. And for completeness, I note your position that the emails during the periods I identified are irrelevant, as well as my disagreement with that view. (Clareman Dec. Ex B)

On February 2, 2024, ETG's counsel sent Borealis' counsel an email that explained, in some detail, that ETG's counsel had now reviewed the entirety of Borealis' document production, had reviewed the situation with ETG's e-discovery vendor, and confirmed that only nine email chains from the Gap Period had been produced. Because non-party KKR was resisting production of KKR's documents on grounds that ETG could and should obtain them from Borealis, ETG's counsel merely asked Borealis' counsel to confirm by February 5 "that you are not seeing any Borealis-produced emails from this time period other than those specified above; and, if so, that Borealis is unable to produce any others from this time period." (Clareman Dec. Ex C)

On February 7, 2024, Borealis' counsel finally wrote back with this:

> We already went through this exercise months ago and confirmed that we have produced everything that hit on the search terms, was responsive to ETG's requests for production, and was not privileged. We do not think it is productive to comment on the remainder of your lengthy email." (Clareman Dec. Ex D)

In June of 2023, Borealis had moved for a stay of discovery pertaining to the SM Funds, on grounds, *inter alia*, that the SM Funds were too remote in time to even be discoverable. *See*

Borealis Brief in support of its motion for a protective order, ECF No. 64 at p.7 ("In November 2017 – over five years after the CRA and RSA were executed – Borealis began to consider a new direct lending fund….") (Clareman Dec. Ex E) See also Toepfer Declaration, ECF No. 65 at ¶19 (same) (Clareman Dec. Ex F).

On December 18, 2023, Magistrate Judge Willis granted Borealis' motion for a protective order with respect to SM Fund discovery. (ECF No. 137, p. 15, Clareman Dec. Ex G) On March 22, 2023, Magistrate Judge Willis denied ETG's first motion for reconsideration of the December 18 Order. (ECF No. 150, Clareman Dec. Ex H). On March 27, 2024, Toepfer gave a deposition in which he testified that he had no light to shed on the Gap Period: "Q: Are you aware of any data loss that occurred in Borealis' server or anything like that? A: No." (*See* Toepfer Depn 120:15-121:5, Clareman Dec. Ex I)

It was not until April 3, 2024 that KKR finally produced the emails between KKR and Borealis that were in KKR's possession and were dated within the Gap Period. In that production, ETG discovered an email showing that Toepfer had in fact proposed a debt fund to KKR back in March 2013, while it was still represented by Miller Buckfire. "Naturally, if we are putting a JV together with KKR, such project would fall into the basket of opportunities we would like to look at together with you as well." (PX-66, Clareman Dec. Ex J). On April 5, 2024, ETG filed a new motion for reconsideration of the Court's stay of SM Fund discovery, on grounds of newly-discovered evidence. (ECF No. 155, Clareman Dec. Ex K) In its moving brief, ETG described the manner in which Borealis had responded to its counsel's inquiries about the Gap Period:

> It is unclear why these emails were not produced by Borealis. Over a year ago, once the parties' document production was substantially complete, ETG's counsel realized that Borealis had produced virtually no emails (only nine) for the entire period between February 23, 2013 and November 17, 2013 (the emails at issue, produced by KKR, are within that period). This was odd, because that was a period of intensive activity and, inevitably, associated email correspondence, between

> KKR and Borealis, as they negotiated and executed the structure and terms of their prospective joint venture. ETG's counsel called this gap in Borealis' production to the attention of Borealis' counsel, more than once. All such inquiries were consistently rebuffed – without any substantive explanation. (Id. at p.3)

In its answering brief, Borealis asserted that "it is unsurprising that there is a small temporal gap in Borealis' production when the discovery ETG seeks spans over a decade. To put it simply: data loss happens." (ECF No. 174, p. 8, Clareman Dec. Ex L).

On June 18, 2024, Magistrate Judge Willis denied ETG's motion for reconsideration, but imposed Rule 37 sanctions on Borealis for its dismissive response to the Gap Period problem:

> Although the Court did not grant Plaintiff ETG's cross-motion to compel discovery on the SM Funds, sanctions under Rule 37 do not require the violation of a court order. See Hedgeye Risk Mgt., LLC v. Dale, No. 21-CV-3687 (ALC) (RWL), 2023 WL 4760581, at *2 (S.D.N.Y. July 26, 2023). Defendant Borealis, instead of offering a compelling reason for the missing emails and the PowerPoint that would have likely been stored elsewhere, seemingly scoffs at the void of what should have been produced, calling it "unsurprising" and justifies it with "[t]o put it simply: data loss happens." The Court does not find "data loss happens" as a "substantially justified" explanation for the missing emails which has now led to both Parties having to complete additional briefing. Therefore, Defendant Borealis is ordered to pay Plaintiff ETG's reasonable attorneys' fees and cost related to this motion. (ECF No. 200, p. 8, Clareman Dec. Ex M)

## ARGUMENT

**Point One: The Temporal Gap In Borealis' Production is Relevant**

Borealis initially responded to ETG's concerns with the Gap Period by asserting, among other things, that documents from that period are irrelevant. (Clareman Dec. ¶2, Ex B at ¶4) That was, and remains, a frivolous assertion. Documents from this period illuminate the scope of what Miller Buckfire delivered to Borealis: not just $100 million in initial Financing, but a Joint Venture partner in KKR that stood ready to proving Financing for follow-on investments, and to explore, when the time was right, the debt fund concept that Toepfer, in 2013, had placed within the "basket of opportunities" that KKR would be asked to consider Financing.

**Point Two: FRE 403 Should Not Shield Borealis From The Consequences of its Own Conduct in Connection with the Gap Period**

Toepfer was a relatively prolific writer of detailed emails, whereas Dillard rarely if ever wrote a narrative of events that exceeded a sentence or two. Toepfer frequently sent emails memorializing conversations or seeking feedback, whereas Dillard almost never did. (Clareman Dec. ¶3). Accordingly, while it is highly likely that there were important internal emails during the Gap Period between Toepfer and his then-partner, Frederick Rye-Florentz, regarding expectations of KKR Financing, those have been lost.

ETG does not have proof that Borealis spoliated whatever emails existed from the Gap Period. It knows only that its efforts to inquire about the subject were summarily dismissed by Borealis, and that Borealis was ultimately sanctioned for its conduct in that regard.

Borealis should not be rewarded for its handling of this problem. It is not entitled to insulate the jury from learning that Borealis does not possess its emails from the Gap Period. Borealis is free to assert whatever explanation it thinks it has for that situation.

**Conclusion**

For the foregoing reasons, Borealis' motion in limine should be denied.

Dated: September 21, 2026

LLOYD S. CLAREMAN

/s/ Lloyd S. Clareman
12 East 49th Street – 11th Floor
New York, New York 10017
Tel. No. (917) 913-0988
Lloyd.clareman@clareman.com

Attorney for Plaintiff
Energy Transportation Group, Inc.