UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENERGY TRANSPORTATION GROUP INC.,<br><br>Plaintiff,<br><br>-against-<br><br>BOREALIS MARITIME LIMITED,<br><br>Defendant. | No. 21-cv-10969 (CM) |

McMahon, J.:

The Court, for its decision on the parties' motions *in limine* and Borealis' motion to strike:

**Plaintiff's Motions In Limine**

1. *Motion to Bar Evidence Relating to Borealis' Performance of Its Obligations to the KKR-Financed Funds (Dkt. No. 290)*

The motion is DENIED. This is actually not a motion in limine; it is a thinly disguised motion for summary judgment on the central issue in this case. Parties frequently try to renew their summary judgment motions as motions in limine and I routinely deny them – as I do this one.
I will not revisit Judge Torres' decision on summary judgment. The jury is entitled to hear evidence bearing on the existence or nonexistence of a continuing connection, which includes testimony about the impact, if any, that Borealis' performance had on KKR's decision to continue investing after EM I.

2. *Motion to Preclude the Testimony of Neil Brown (Dkt. No. 305)*

The motion is DENIED AS MOOT. Borealis represents that Mr. Brown's testimony will be limited to "matters within his personal knowledge – namely, the failed effort to establish a debt fund in 2013." Dkt. No. 318 at 6.[1] I will hold Borealis to that representation.

[1] All page number citations, unless otherwise noted, are to the ECF page number, not the page number in the underlying document.

**Defendant's Motions In Limine and Motion to Strike**

1. *Motion to Exclude Evidence Concerning Borealis' Litigation Reserve (Dkt. No. 293)*

The motion is GRANTED for substantially the reasons set forth in Defendant's brief in opposition. Any evidence about the litigation reserve is irrelevant, prejudicial, and risks confusing the jury. *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 278–79 (S.D.N.Y. 2015).

2. *Motion to Exclude Evidence Concerning Plaintiff's Abandoned Co-Investment Claim (Dkt. No. 296)*

The motion is GRANTED. Introduction of evidence about something that is not at issue in the case will be unnecessarily confusing to the jury and the Court does not believe, in a complex commercial suit of this nature, that a limiting instruction to the effect that evidence is being provided only for "context" will cure the confusion – in fact, I believe it is likely to exacerbate the confusion. If the co-investment claim were truly "intertwined" with the other issues in suit, it should not have been abandoned. I will not allow ETG to get in through the back door evidence about an issue it has decided not to pursue, on some theory of "intertwining." And if ETG were to argue to the jury that the failure to provide co-investment opportunities was part of some unified course of conduct, the jury would have to decide the very issue that ETG is no longer pursuing as a claim in order to consider it as part of the course of conduct. That I will not allow.

3. *Motion to Exclude Evidence Concerning the Gap Period (Dkt. No. 299)*

The motion is GRANTED. There is no dispute about the underlying reason for the missing emails and ETG has not moved to preclude on the ground of spoliation. Submissions to the Court reflect that a system-wide IT migration of Borealis' email accounts likely caused loss of emails from February to November 2013.

Borealis' obstructive conduct in response to ETG's attempts to understand the reason for the gap period was inexcusable and was properly sanctioned by Magistrate Judge Willis. However, that does not mean ETG can invite the jury to speculate that "it is highly likely that there were important internal emails during the Gap Period" about the expectations of KKR financing. Dkt. No. 315 at 8. The emails are lost and no one contends that the loss was due to spoliation, so neither party can suggest to the jury that it speculate about whether emails existed or what might have been in them.

The Court cautions Borealis that eliciting testimony that nothing happened in the gap period, or that prompts the jury to draw some inference from the lack of emails, could open the door to a revisitation of this issue.

4. *Motion to Exclude Evidence Concerning Defendant's Nonpayment of EM I Carried Interest During Litigation (Dkt. No. 302)*

The Court is perplexed as to why the parties could not agree to an effective stipulation encompassing this issue. I reviewed the submissions, and it appears that both sides agree that, for

the purposes of trial, the RSA applies to EM I and that ETG is entitled to 7.5% of the Class D carried interest that Borealis received from EM I. What remains in dispute is whether ETG is also entitled to 7.5% of certain exit fees associated with EM I. ETG contends it is; Borealis responds it is not. As far as I can tell, both parties agree with the foregoing and the jury will be so instructed. *See* Dkt. Nos. 304–1 at 4; 311 at 4–6.

But, in addition, ETG insists that, "The jury needs to be advised that Borealis has not paid," amounts that are concededly due. It reasons that the jury should be told this because "(1) it is true, (2) it concerns the contract and the obligations that are in dispute in this litigation, and (3) Borealis should not be permitted to present a counterfactual narrative to the jury concerning its behavior with respect to the RSA." Dkt No. 311 at 6.

This is not an argument for relevance. Moreover, it makes no connection between Borealis' nonpayment of EM I carried interest during litigation and any issue still before the jury. The Court notes that the parties were in communication about a stipulation that would have prevented everyone spending time on this motion in limine. ETG's short and nonsensical responses to that proposed stipulation prevented any agreement from being reached. *See* Dkt. No. 304–1 at 2–3. ETG's opposition to the motion in limine is without merit.

For those reasons, the motion is GRANTED. ETG is barred from (1) introducing evidence that Borealis has not paid ETG its portion of the EM I carried interest; and (2) disclosing anything about the Court's determination of liability at summary judgment. The jury will be instructed that Borealis' liability for EM I carried interest is not in dispute, and its consideration will be limited to liability for exit fees. When the Court enters judgment, it will include any amount that is concededly due to ETG for EM I carried interest.

5. *Motion to Exclude Untimely Expert Testimony (Dkt. No. 329)*

The motion is GRANTED based on ETG's representation in its opposition that it "agrees that the Court, rather than the jury, will make the determination of the appropriate methodology for calculating prejudgment interest in this case." Dkt. No. 335 at 4. ETG may not present testimony from Mr. Jain about prejudgment interest. At the appropriate time, the Court will decide the method for calculating prejudgment interest.[2]

6. *Motion to Strike Finder's Fee Claim from the Joint Pretrial Order (Dkt. No. 325)*

The motion is GRANTED.

Borealis has moved to strike ETG's claim that Borealis breached the RSA by failing to pay ETG 25% of the $50,000 that Borealis received in January 2015 from Miller Buckfire. The RSA provides that Borealis shall pay to ETG 25% of any Finder's Fee paid by Miller Buckfire to Borealis. Dkt. No. 24-1 at 2. The parties submitted the proposed Joint Pretrial Order on September 4, 2026, and the Finder's Fee claim was added in Plaintiff's section of the proposed Order. The

[2] The Court is not prejudging the case. But when the motion for summary judgment was decided, the Court found Borealis liable with respect to EM I. At minimum, prejudgment interest will need to be calculated for that claim.

claim was included over Borealis' objection, and Borealis reserved its right to bring a motion to strike.

ETG did not assert the Finder's Fee claim in the Amended Complaint, and did not do so during the nearly four-year period of discovery in this case – March 8, 2022 to March 6, 2026. Judge Torres set April 7, 2022 as the cut-off date for amending the pleadings and ETG did not make a motion for leave to amend its Complaint before that date. In fact, it never made such a motion.

ETG argues that it is entitled to proceed on the claim under Fed. R. Civ. P. Rule 15(b)(1-2). Its submission references and cites the text of both subsection (b)(1) and (b)(2).

Under 15(b)(1), a court may permit the pleadings to be amended, if, "at trial, a party objects that evidence is not within the issues raised in the pleadings" and amendment does not prejudice the other party. Under 15(b)(2), "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." These are commonly known as conforming the pleadings to the proof. But deeming the pleadings amended to conform to the proof depends on the other party's consent and lack of prejudice.

Rule 15(b)(2) does not permit amendment to insert the unpleaded Finder's Fee claim because Borealis does not consent, either expressly or impliedly, that the claim can be tried. To the contrary, Borealis is moving to strike the claim from the Joint Pretrial Order, which was the first time it was asserted.

ETG argues that Borealist impliedly consented to trying this unpleaded issue because Borealis exchanged discovery relevant to the Finder's Fee claim – including disclosing some documents, responding to one interrogatory, answering a handful of deposition questions, and rebutting opposing expert calculations.[3] It did not.

The overwhelming weight of authority is that implied consent does not arise from conduct like Borealis' here. *See, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 604–05 (S.D.N.Y. 2007) (finding that objection to new claim alleged in pretrial order defeated assertion of implied consent). Critically, implied consent is a "narrow exception" and may not be "implied through an alleged understanding between the parties[.]" *Ho Myung Moolsan, Co. v. Manitou Min. Water, Inc.*, 2010 WL 4892646, at *14 (S.D.N.Y. Dec. 2, 2010), aff'd, 501 F. App'x 85 (2d Cir. 2012). The Second Circuit has agreed that implied consent should be found sparingly: "The purpose of Rule 15(b) is . . . not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record." *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 680 (2d Cir. 1985).

ETG points to one case where a court wrote that consent may be implied if a claim is "introduced outside the complaint—say, by means of a sufficiently pointed interrogatory answer or in a pretrial memorandum—and then treated by the opposing party as having been pleaded, either through his effective engagement of the claim or through his silent acquiescence."

[3] Borealis' expert was explicit that his report was merely a response to an opposing expert: "My rebuttal is limited solely to the figures provided in the Jain Report." Dkt. No. 220-66 at 3.

*Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 604 (S.D.N.Y. 2007) (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)). The problem for ETG, however, is that in *Rodriguez*, the court actually rejected the plaintiff's claim of implied consent based on a fleeting reference in a pretrial order – even though the court stated, in dictum, that an interrogatory answer might constitute consent. *Id.* at 1172. The fact that one sentence of dictum in a case where no implied consent was found is all the authority ETG could muster demonstrates the weakness of its argument for implied consent.

There is no implied consent here. The case is not even close. On the facts of this case, the Court cannot and will not leap to the inference that Borealis (1) understood during the discovery phase that ETG was pursuing an unpleaded claim and then (2) consented to the addition of this unpleaded claim by answering a few questions during discovery.

When deciding motions for amendment under Rule 15(b)(2), courts usually consider both consent and prejudice (the standard under Rule 15(b)(1)). However, "courts commonly do not reach the issue of prejudice where the party opposing amendment has not consented to litigate the unpled issue." *Myers v. Moore*, 326 F.R.D. 50, 61 (S.D.N.Y. 2018). As Borealis has (1) expressly not consented, and (2) has not impliedly consented, the Court need not reach the issue of prejudice. However, I conclude that it would be prejudicial to include an unpleaded claim that was not announced to the other side until the filing of the final pretrial order.

Accordingly, the motion to strike the unpleaded claim is GRANTED.

ETG then says that it will move for leave to amend if the Court deems it necessary. To amend, ETG would need to seek leave under Rule 16, which provides that, after a Court enters a scheduling order, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As discussed above, we are on the eve of trial, and many years past the scheduling order's deadline for amendments. Furthermore, if indeed ETG conducted discovery that addressed the Finder's Fee issue, it can hardly contend that it was not aware of this claim years ago. Yet ETG never sought leave to amend the complaint to assert such a claim. So there is neither "good cause" for an amendment at the eleventh hour and fifty ninth minute nor is there consent from the trial judge. The Court will not entertain a motion for leave to amend with the trial just two weeks away.[4] The claim is precluded.

There remains the question of whether ETG can introduce failure to pay the Finder's Fee as evidence of a unified course of conduct frustrating the RSA. The answer is no, it cannot – because, in order to conclude that failure to pay the Finder's Fee was part of a unified course of conduct, the jury would have to find that a Finder's Fee was owed. It would, in other words, have to decide the very claim that ETG failed to assert throughout the course of this lawsuit, and that the Court has precluded it from asserting now. I will not allow ETG to get in through the back door evidence about a claim that it is not permitted to pursue at trial.

---

[4] New York's statute of limitations for such a claim is six years, see N.Y. C.P.L.R. § 213(2). The Finder's Fee payment was allegedly due in 2015. It is now 2026.

**CONCLUSION**

The Clerk of Court is directed to remove the following motions from the Court's list of open motions: Dkt. Nos. 290, 293, 296, 299, 302, 305, 325, 329.

Dated: October 20, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL